**IT IS ORDERED as set forth below:**



**Date: October 31, 2018**

_____
**James R. Sacca
U.S. Bankruptcy Court Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| SNAP LINE SERVICES, INC. ) | |
| ) | Case No. 18-21223-JRS |
| Debtor. ) | |
| ) | |
| ) | |
| SNAP LINE SERVICES, INC. ) | |
| ) | |
| Movant ) | |
| ) | |
| v. ) | CONTESTED MATTER |
| ) | |
| TED RIDLEHUBER, Trustee of ) | |
| VM Trust #1 and G&M International, LLC ) | |
| ) | |
| Respondent. ) | |
| ) | |

1

|  |  |
|---|---|
| TED RIDLEHUBER, Trustee of<br>VM Trust #1 and G&M International, LLC<br><br>    Movant<br><br>v.<br><br>SNAP LINE SERVICES, INC.<br><br>    Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)   CONTESTED MATTER<br>)<br>)<br>)<br>)<br>) |

## **ORDER**

The primary issue before the Court is what are the respective interests of the estate and a judgment creditor in cash deposited with the state court pre-petition in lieu of a supersedeas bond when the debtor loses on appeal and all applicable time periods related to the appeal expire post-petition.

This issue arose out of Snap Line Services, Inc. ("Snap Line")'s Motion for Turnover of Estate Property and for Sanctions as to Ted Ridlehuber and Russell Hodges [Doc. No. 12], as well as Ted Ridlehuber, Trustee of VM Trust #1 and G&M International, LLC ("Ridlehuber")'s Motion for Relief from the Automatic Stay [Doc. No. 15]. Additionally, the Court asked the parties to brief the following issues: (1) what distinction, if any, exists between a supersedeas bond and a deposit of cash made with the Clerk of Court and the possible legal consequences of that distinction, (2) whether Snap Line had any interest in the cash deposited with the Clerk of Court at the time of filing such that it became property of the bankruptcy estate, and (3) what is the current legal status of the cash deposit now that Snap Line has exhausted all legal remedies in state court.

2

## BACKGROUND

These contested matters arise from attempts by Ridlehuber to collect $62,500 that was placed by Snap Line as or in lieu of a supersedeas bond with the Clerk of the Superior Court of Forsyth County pending the appeals process of a judgment Ridlehuber obtained against Snap Line in the amount of $572,000 [Doc. No. 16]. The final order and judgment in the Superior Court was entered on May 23, 2016, *nunc pro tunc* to May 19, 2016 [Doc. No. 16]. Snap Line was ordered to post a supersedeas bond in the amount of $62,500 on November 21, 2016 and posted the cash deposit with the Clerk [Doc. No. 16]. Snap Line appealed the judgment to the Court of Appeals of Georgia, which affirmed the trial court on October 31, 2017 and denied Snap Line's motion for reconsideration on November 17, 2017 [Doc. No. 16]. On June 18, 2018 the Georgia Supreme Court denied Snap Line's petition for certiorari [Doc. No. 16]. Snap Line filed its Chapter 11 petition the next day on June 19, 2018 [Doc. No. 1]. Ridlehuber filed a motion with the Superior Court of Forsyth County on July 9, 2018 seeking release of the deposit [Doc. No. 32]. The appellate court sent a remittitur to the trial court on July 10, 2018 [Doc. No. 30].

## DISCUSSION

Snap Line contends that the supersedeas cash became property of the bankruptcy estate upon the filing of the petition as the appellate process was not complete at that time so the post-petition attempt by Ridlehuber to obtain the funds was a violation of the automatic stay [Doc. No. 12]. Snap Line requests that this Court order the Clerk to turn over the money to it as estate property and sanction Ridlehuber and his attorney. Ridlehuber asserts that Snap Line had, at most, a contingent non-vested interest in the supersedeas cash that terminated upon the completion of the appellate process. It appears to be Ridlehuber's position now that the automatic stay was

3

terminated in regard to the collection of the supersedeas bond on August 18, 2018, after the 60-day extension (from the petition date) provided by 11 U.S.C. §108(b) had expired, but he has nevertheless requested relief from the stay to pursue collection of the bond as well as another civil action[1] [Doc. No. 15]. Greg Allen, Clerk of Superior Court of Forsyth County, filed a response to the motions, indicating that he would wait for direction from this Court regarding the disbursement of the funds [Doc No. 25].

During the hearing on September 7, 2018, counsel for Snap Line first raised the issue of there being a legal distinction between a supersedeas bond involving a third-party surety and a deposit of cash directly from the party ordered by the court to post one or the other. In the briefing that ensued, counsel for Snap Line asserted that the cash deposit is not a bond at all, but rather an asset of Snap Line that became estate property upon filing of the petition [Doc. No. 33]. Citing to *In re Legend Homes, Inc.*, 69 B.R. 797 (Bankr. D. Ariz. 1987) and *In re Hammon*, 180 B.R. 220 (B.A.P. 9th Cir. 1994), Snap Line argues that there is a distinction between cash and the "contractual promise" of a bond such that a cash deposit with the Clerk of Court becomes property of the estate as of the filing of the petition (and presumably, a standard third-party surety bond would not). This Court notes that both *Legend Homes* and *Hammon* are Ninth Circuit cases involving a contractor's bond, which is cash placed with the state licensing board in order to ensure payment of *possible future claims* against the contractor. *In re Hammon*, 180 B.R. at 221. However, a supersedeas bond or cash deposit is made in response to a claim that resulted in a judgment against the party making the deposit, which seems to be a fairly important distinction. Additionally, while both *Legend Homes* and *Hammon* found that the cash became estate property,

---

[1] Ridlehuber has agreed not to proceed against Snap Line in a civil action he previously filed in Cobb County that includes multiple defendants, Snap Line originally being one.

4

both courts also indicated that "there is both statutory basis and common law basis for different treatment of the class of creditors entitled to make a claim to all or part of the monies." *In re Legend Homes, Inc.*, 69 B.R. at 801. In other words, the cash deposit was not just more cash to be added to the pool of funds used to pay general unsecured creditors; rather, the creditor(s) who had claims against the construction bond preserved their equitable interest in the cash even after it became property of the estate. *In re Hammon*, 180 B.R. at 223. Should this Court choose to follow the full line of reasoning in these cases, it appears that the result would be that the cash enters the estate, but subject to the interest of Ridlehuber, the *only* creditor that has a claim to the funds.[2]

Snap Line suggests that there were only two ways Ridlehuber would have an interest in the cash upon the filing of a bankruptcy petition: (1) had the appeals process been exhausted and Ridlehuber requested disbursement of the funds and actually took possession of said funds, or (2) if Ridlehuber had taken an action to attach his judgment to the funds, such as by garnishing the bank account where they were held [Doc. No. 33]. Snap Line relies on *In re Johnson*, 479 B.R. 159 (Bankr. N.D. Ga. 2012) to assert that judgments do not attach to cash under Georgia law unless the judgment holder files a garnishment, but *Johnson* concerns the garnishment of a debtor's paycheck, not a third-party bank account containing funds that the debtor deposited there pursuant to court order to satisfy a judgment against them pending appeal. This Court disagrees with the notion that a party who has won a judgment and is waiting for the end of the appeals process should have to attempt to garnish funds held by the court as security for that judgment. Snap Line

---

[2] This Court was able to find a few cases where a court referred to a cash deposit as a bond or supersedeas bond or treated the two interchangeably. *See In re Toy King Distributors, Inc.,* No. 90-00528-BKC-6C1, 2000 WL 33961158, at *2 (Bankr. M.D. Fla. Dec. 15, 2000)("The bond shall be a bond with…defendant as principal and a surety company…or cash deposited with the clerk of court."); *In re Nat. Land Corp.*, 84 B.R. 815, 816 (Bankr. M.D. Fla. 1988)("a supersedeas bond which initially provided a monthly payment of $8,000 into the registry of the Court."). In short, the nature of the supersedeas, be it cash or a third-party surety, does not have any bearing on the disposition of the instant case.

5

has cited no authority to support the contention that a judgment creditor must either physically possess the cash or garnish the holding account in order to obtain an interest in a *supersedeas cash deposit*. In fact, courts have held that the supersedeas bond process "secur[es] the Defendant's judgment" and its sole purpose is to "furnish security to the appellee." *In re Vescovo*, 125 B.R. 468, 472-73 (Bankr. W.D. Tex. 1990)(holding that a cash deposit placed in lieu of a standard bond with the clerk of court creates a "lien perfected in favor of the Defendant.") The Court of Appeals of Georgia addressed the status of a "cash bond" in *Landau v. Davis Law Group, P.C.*: "The cash bond would have the legal effect of standing in lieu of a lien which otherwise attaches and remains by way of the recorded writs although their enforcement is stayed by the supersedeas…" *Landau*, 269 Ga. App. 904, 908 (2004). This Court believes that Ridlehuber's interest in the cash did not just vanish when Snap Line filed for bankruptcy, which would have resulted in Ridlehuber having the same status as a general unsecured creditor. To hold otherwise would result in a situation where any party with a judgment against them ordered by the court to place a supersedeas bond could make a cash deposit, file a bankruptcy petition, file a request to turnover property of the estate, and then use the cash to pay creditors other than the judgment holder. This would defeat the primary purpose of a supersedeas bond, which is to protect the appellee's judgment "from non-satisfaction in the event appellant has insufficient assets to satisfy…when the judgment is affirmed on appeal." *Bank S., N.A. v. Roswell Jeep Eagle, Inc.*, 200 Ga. App. 489, 489 (1991).

The Eleventh Circuit does not appear to have adopted a position regarding the issue of whether (or when) a supersedeas bond or cash deposit becomes property of the estate as the time of a bankruptcy filing. Other courts are split, but the majority seem to conclude that if the appeals process is not complete, then the bond does become property of the estate, at least temporarily. *See*

*Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.)*, 162 B.R. 935 (Bankr. S.D.N.Y. January 4, 1994)("If at the time of filing the petition the appellate process has not been concluded, the debtor still has an interest in the supersedeas bond cognizable under Section 541…"); *In re Duplitronics*, Inc., 183 B.R. 1010 (Bankr. N.D. Ill. 1995)("The appellant retains a reversionary interest in the bond subject to divestment."); *But see In re Spiro*, 305 B.R. 142 (Bankr. D. Conn. 2004)("[T]he underlying bond itself is not property of a bankruptcy estate unless and until the debtor's appeal succeeds.")

Similarly, courts are split on the issue of what happens to the debtor's interest in the bond when the appellate process is exhausted and the judgment against the debtor is upheld. Some hold that the bond simply drops out of the estate at the conclusion of the appellate process, divesting the debtor of the contingent reversionary interest that it had, and allowing the creditor to proceed as it normally would. *See In re Duplitronics, Inc.*, 183 B.R. 1010, 1014 (Bankr. N.D. Ill. 1995)(holding that upon conclusion of the appellate process "the appellant no longer has a property interest in the bond"); *In re Celotex Corp.*, 128 B.R. 478 (holding that upon unsuccessful appeal "[the estate's] property interest can be divested and any efforts by the debtor to prevent the judgment creditor from [collecting the bond] must be sought under Section 105.] (Bankr. M.D. Fla. 1991); *In re Keene*, 162 B.R. 935)(holding that the automatic stay does not prevent judgment creditors from seeking to collect the bond after appeal).

Other courts require that the judgment creditor move for relief from the stay to obtain the bond. *In re Koksal*, 424 B.R. 470 (Bankr. D. Kan. 2010)("*Koksal* 1"), is one such case, and Snap Line relies heavily in its Motion to Compel Turnover on a subsequent proceeding in the same case, *In re Koksal*, No. ADV. 09-5079, 2010 WL 3277858 (Bankr. D. Kan. Aug. 17, 2010)("*Koksal* 2")

7

in an attempt to assert that the entire cash deposit is estate property subject to normal distribution. Similarly to the analysis of *Legend Homes* and *Hammon* by Snap Line in its supplemental brief, Snap Line provides the Court with portions of the holding that support its position, but fails to note some of the conclusions that the court had reached in *Koksal* 1 that were contrary to that position, and provide some important background to *Koksal* 2. *Koksal* 1 certainly stands for the proposition that a cash bond is property of the estate upon filing, but it also indicates that when the appellate process concludes the judgment creditor may move for relief from the stay in order to begin the appropriate state court procedures to determine who should receive the funds. *Koksal*, 424 B.R. at 478. Therefore Snap Line is incorrect when it argues that "on those facts [in *Koksal*], the cash [in the instant case] should be paid to the estate for the benefit of all creditors." [Doc. No. 12]. In fact, the further procedural history of *Koksal* is worth noting. In *Koksal* 2, the court explains that the state court had found that the creditor was entitled to the bond funds (which were at that time being held in the creditor's attorney's escrow account pending the bankruptcy litigation), but they also held that the trustee was entitled to turnover of the amount of the bond that represented the "estate's interest…which value certainly is significantly less that the total Cash Bond amount." *Koksal* 2 at *4. After evidentiary hearings, in an order dated July 11, 2011, Judge Somers found that the "estate's interest" had *no value whatsoever*, because the "contingency, the forfeiture of Debtor's interest in the Cash Bond, deprived the estate of any interest in the Cash Bond." (Case 09-05079, Doc. No. 134, Bankruptcy Court of the District of Kansas).

The parties also disagree on when the appellate process was completed, which is relevant to both the Motion for Sanctions and a determination of the parties' interests in the bond at various times. Both agree that, in general, a motion for reconsideration may be filed with the Georgia

8

Supreme Court within ten days from the denial of certiorari. The denial occurred on June 18, 2018, giving Snap Line until June 28, 2018 to file the motion under state law. Snap Line did not file a motion for reconsideration by then, but in the interim it filed its Chapter 11 petition on June 19, 2018 [Doc. No. 1]. This complicates the timeline because 11 U.S.C. § 108(b) provides:

> (b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of--
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) 60 days after the order for relief.

Therefore, pursuant to §108(b), Snap Line had until August 18, 2018 to file the motion. It is worth noting that Snap Line did not file a Motion for Reconsideration at any time before, or after August 18, 2018. Presumably because the Supreme Court was not considering the effect of §108(b), the remittitur from the appellate court was sent to the trial court on July 10, 2018, at which point Title 5 of the Georgia Code provides that "the supersedeas shall cease and execution shall issue at once for the original judgment." O.C.G.A § 5-6-12. Ridlehuber filed his motion with the state court to release the supersedeas on July 9, 2018, one day before the remittitur vested jurisdiction back in the trial court [Doc. No 44].

This Court finds that Ridlehuber's action to collect the cash deposit was a violation of the automatic stay because it occurred after the bankruptcy petition had been filed, and before the appeals process was terminated regardless of whether it occurred on either July 10, 2018 or August

9

18, 2018. However, given the confusion regarding an assessment of when the appellate process concluded, the unsettled law on the issue of the nature of the estate's interest in the cash deposit, and the fact that no motion for reconsideration was ever filed by Snap Line in the Georgia Supreme Court, the Court has determined that the violation of the stay was not willful and that Snap Line was not damaged by it; therefore, the violation was not sanctionable in this instance.[3]

Even if the supersedeas cash deposit became property of Snap Line's bankruptcy estate upon the filing of the petition, this Court finds that the contingent, unvested interest that Snap Line had in said cash either terminated upon the date that the appellate process concluded, in which event the stay dissolved by operation of law such that Ridlehuber is entitled to proceed without further order of the court, or cause exists to modify the stay to allow him to proceed to exercise his state law rights and remedies to enforce his right to the cash deposit because Snap Line cannot adequately protect Ridlehuber's interest in the cash. Either way, Ridlehuber is now free to proceed in state court to obtain release of the funds. Accordingly, it is hereby

**ORDERED** that Snap Line's Motion for Turnover of Estate Property and for Sanctions is **DENIED**; it is further

**ORDERED** that, to the extent it is necessary given that the automatic stay may not currently be in place as regards the supersedeas bond, Ridlehuber is granted relief from the stay to pursue the collection of the bond from the Clerk of Court and the Superior Court of Forsyth County may proceed with the procedures established by state law regarding the disposition of the supersedeas bond posted by Snap Line in the amount of $62,500; and it is further

---

[3] In addition, Section 362(k) authorizes damages to be paid to an individual, as opposed to a person, who is injured by a willful violation of the stay. Because Snap Line is a corporation, it is debatable at best whether it is entitled to damages under this section. The Court, however, is not ruling on that or whether it can award damages to a non-individual under some other section, including Section 105.

10

**ORDERED** that the automatic stay is still in place regarding all other matters because Ridlehuber has agreed that he would not proceed against Snap Line in the Cobb County Action.

**END OF ORDER**


## DISTRIBUTION LIST

Michael D. Robl
Robl Law Group LLC
Suite 250
3754 LaVista Road
Tucker, GA 30084

W. Russell Hodges, Esq.
The Hodges Law Firm
520 Pirkle Road, Suite C
Cumming, GA 30040

David S. Weidenbaum
Office of the U.S. Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

Brian S. Limbocker
Limbocker Law Firm, LLC
Building 100 Suite 140
2230 Towne Lake Parkway
Woodstock, GA 30189

Kenneth P. Robin
JARRARD & DAVIS, LLP
222 Webb Street
Cumming, Georgia 30040