**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| SNAP LINE SERVICES, INC., | ) | CASE NO. 18-21223-jrs |
| | ) | |
| Debtor. | ) | |

# DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION

COMES NOW **Snap Line Services, Inc.**, through its undersigned counsel, and submits this First Amended Plan of Reorganization, dated **January 30, 2019**:

## ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Snap Line Services, Inc. (the "Debtor") from revenues generated from ongoing business operations of Debtor.

This Plan provides for **1** class of secured claims; **1** class of general unsecured claims; **1** convenience class of unsecured claims of $7,500 or less in amount; and **1** class of equity security holders. Secured creditor Ted R. Ridlehuber, as Trustee of VM Trust #1 ("VM Trust 1") will receive payment of the full amount of the secured claim (as more fully set forth in Article IV). Unsecured creditors with claims of less than $7,500 will be paid in full as part of a "convenience class" within 30 days of the Effective Date (as defined herein). All unsecured creditors holding allowed claims apart from those in the convenience class will receive payment in full from distributions over a period of 60 months with a balloon payment following the 60th month as more fully set forth in Article IV. This Plan also provides for the payment of administrative and priority claims in full.

All creditors and equity security holders should refer to Articles II through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders will be circulated with this Plan when votes are solicited. Your rights may be

affected by this Plan. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

Claims and interests are being classified as follows:

2.01 Class 1. The claim of VM Trust 1, as a secured claim, to the extent of the value of property to which the Judgment had attached pre-petition (the "Secured Claim"). VM Trust 1 holds a Judgment against Debtor, which attached pre-petition to Debtor's tangible assets identified on Schedule B, item 41, consisting of office equipment with a value of scheduled in the amount of $10,547.27 (the "Judgment Collateral").

2.02 Class 2. All unsecured non-priority claims exceeding the amount of $7,500.00, to the extent allowed under § 502 of the Code.

2.03 Class 3. All unsecured non-priority claims in the amount of $7,500.00 or less, to the extent allowed under § 502 of the Code (the "Convenience Class Claims").

2.04 Class 4. Equity interests of the Debtor.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01 *Unclassified Claims*. Under section §1123(a)(1), any and all administrative expense claims, and any and all priority tax claims are not in classes, unless specifically placed in a class in Article II above.

3.02 *Administrative Expense Claims*. Any and all administrative-expense claims allowed and entitled to priority under 11 U.S.C. §§ 503 and 507(a)(1) are not placed in Classes and will be paid in full on the Effective Date, except to the extent that any holder of such a claim

agrees to some other treatment. The Debtor retains the right to object to any administrative expense claim.

3.03 *Priority Tax Claims*. Any and all holders of a priority tax claim will be paid consistently with Section 1129(a)(9)(C) of the Bankruptcy Code. Specifically, the Debtor will pay all holders of tax claims under Section 507(a)(8) of the Bankruptcy Code in monthly installments, with interest, beginning on the last business day of the first month following the Effective Date, for payment in full with a period of five (5) years from the date of the order for relief in this case, at an equal rate over the term of the payments, and in the allowed amounts of such claims as of the Effective Date of the Plan. The interest rate shall be four percent (4.00%) pursuant to 11 U.S.C. § 511(b).[1]

3.04 *United States Trustee Fees*. All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

---

[1] Pursuant to 11 U.S.C. § 511(b), which sets the interest rates to be paid on tax claims, "the rate of interest shall be determined as of the calendar month in which the plan is confirmed" and "the rate of interest shall be the rate determined under applicable nonbankruptcy law." According to Internal Revenue Manual, § 5.9.15.3 (03-01-2007), regarding bankruptcy "Plan Interest Rates," the applicable interest rate on IRS claims paid under confirmed Chapter 11 plans is "the interest rate being charged by the IRS as determined by IRC § 6621." Internal Revenue Code section 6621 provides "The underpayment rate established under this section shall be the sum of— (A) the Federal short-term rate determined under subsection (b), plus (B) 3 percentage points." IRC § 6621(a)(2)(A) - (B).

The "short-term rate determined under subsection (b) of IRC § 6621 is that certain rate as set periodically by the Secretary of the Treasury. *See* IRC § 6621(b)(1) ("(b) Federal short-term rate. For purposes of this section— (1) General rule. The Secretary shall determine the Federal short-term rate for the first month in each calendar quarter."). The Secretary of the Treasury makes the determination of the short-term rate in accordance with IRC section 1274(d). *See* IRC § 6621(b)(3) ("Federal short-term rate. The Federal short-term rate for any month shall be the Federal short-term rate determined during such month by the Secretary in accordance with section 1274 (d). Any such rate shall be rounded to the nearest full percent (or, if a multiple of 1/2 of 1 percent, such rate shall be increased to the next highest full percent).").

In the event that the most favored non-priority unsecured claim provided for by this Plan would be paid ahead of any holders of tax claims under Section 507(a)(8) of the Bankruptcy Code, then the payments to holders of tax claims under Section 507(a)(8) of the Bankruptcy Code shall be accelerated to match the treatment of most favored non-priority unsecured claim provided for by this Plan. Debtor may pay off priority tax claims faster than provided for in this section of the Plan if funds are available.

ARTICLE IV
TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan.

*Class 1 – the Secured Clam of VM Trust 1.* The Secured Claim of Class 1 shall be paid in full on the Effective Date (as defined herein) from cash accumulated in Debtor's DIP account. All payments will be delivered to the offices of Brian Limbocker, counsel for VM Trust 1, unless a different date is designated on any Proof of Claim filed by VM Trust 1, in which event the payment to Class 1 shall be delivered to the address on the most recently filed Proof of Claim submitted by the Class 1 claimant. VM Trust 1 will retain its Judgment lien on the Judgment Collateral until its Secured Claim is paid in full as provided for herein. Class 1 is not impaired under the Plan.

4.01.2 *Class 2—Unsecured Claims exceeding $7,500.* Unsecured non-priority claims exceeding $7,500 in amount will be paid, on a *pro rata* basis, in **60** equal monthly payments beginning on the last day of the month after the Effective Date, with their *pro rata* share of a $6,000.00 per month dividend being determined once claim amounts are determined and allowed by the Court. This results in a distribution to Class 2 claimants through monthly plan payments totaling **$360,000.00** during the life of the Plan. Debtor will satisfy the remaining balance of the Class 2 claims in the month following the 60th payment provided for herein through a balloon payment, which Debtor may make by means of obtaining a loan, obtaining new equity investors, any accumulated cash from business operations, or a combination of the foregoing methods. Class 2 is paid in full; accordingly, it is not impaired under the Plan.

Additional payment to Class 2: After paying Class 1 in full, Class 3 in full, and paying or reserving the amount of administrative expense claims (including any amounts reserved for U.S. Trustee fees, legal fees of Debtor's counsel, accounting fees, and any fees for Plan feasibility experts and consultants), Debtor shall pay the holders of Class 2 unsecured Claims exceeding $7,500 an additional distribution equal to the amount of all cash accumulated in Debtor's DIP account as of the Effective Date, which shall be paid by not later than the last day of the month following the Effective Date, on a *pro rata* basis, with their *pro rata* share of accumulated cash being determined once claim amounts are determined and allowed by the Court.

4.01.3 *Class 3—Unsecured Convenience Class Claims*. Unsecured non-priority claims of $7,500.00 or less will be paid, in full, on the last day of the month after the Effective Date from cash accumulated in Debtor's DIP account. Class 3 is impaired under the Plan.

4.01.4 *Class 4 – Equity Holders*. Equity holders are retaining 100% of their interests in the Debtor, as all creditors are being paid in full. Equity holders are not impaired under the Plan.

4.02. *Payment of unscheduled administrative expenses*. Administrative expense claims are not classed under this Plan and are dealt with as provided for in Article III of the Plan, unless expressly provided for in a class herein.

4.03 *Pro-rata Distribution*. With respect to any distribution to a class under this Plan as of any particular distribution date, each claimant within the class shall receive a pro rata share of the distribution, which shall mean that the ratio of the cumulative amount of all funds distributed to the amount of each allowed claim shall be the same as the ratio of the cumulative amount distributed to such a class to the total amount of all allowed claims in a particular class.

4.04 *Unclaimed Distributions*. "Unclaimed distributions" shall mean (a) any funds returned as undeliverable without a proper forwarding address and (b) checks not presented and paid within ninety (90) days of their distribution by the Debtor to claimants. Unclaimed distributions shall be held by the Debtor for a period of One Hundred and Eighty (180) days after a distribution is made, after which time the unclaimed distribution shall be deemed as unclaimed by the intended recipient and may be distributed to other claimants within the same class *pro rata* at that time or as part of the next regularly scheduled distribution.

4.05 *Rounding*. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent.

4.06 *Method of Cash Distribution*. Any cash payment to be made pursuant to the Plan may be made by check. Any payment due on a Holiday or a weekend day shall be made, without interest, on the next following day that is not a Holiday or weekend day.

4.07 *Prepayment*. Provided that it is not in default of its obligations under this Plan, the Debtor may prepay, without penalty, all or any portion of any allowed claim, at any time, but shall not have any obligation to do so.

ARTICLE V
ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 *Disputed Claim*. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated; or (iii) an adversary proceeding has been filed to avoid or disallow a claim; or (iv) the claim is referenced as disputed herein.

5.02 *Delay of Distribution on a Disputed Claim*. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order, after which distributions will start on the next date scheduled by this Plan on which allowed claims are to receive a distribution and not immediately upon entry of a final non-appealable order allowing such claim. The Debtor may reserve an amount in its discretion from distributions as a contingency fund to put toward the satisfaction of disputed claims in the event they are allowed.

5.03 *Settlement of Disputed Claims*. The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

ARTICLE VI
PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan:

Any and all agreements between Debtor and Castle Credit;

Any and all leases of office space which remain un-terminated on the date of confirmation of this Plan; and

Any and all warranties and service plans running in favor of Debtor.

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before

the date of the order confirming this Plan, upon the effective date of this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than twenty (20) days after the date of the order confirming this Plan or it shall be barred forever. A claim for damages resulting from rejection of executory contracts shall be treated as a claim of a non-priority unsecured creditor.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

The plan will be implemented as follows.

7.01 *Officers of reorganized Debtor*. Mr. George Victor Matthews will serve as the sole officer of the reorganized Debtor. Mr. Matthews is an "insider" of the Debtor. Mr. Matthews has substantial experience brokering the sale of consumer finance agreements from dealers to purchasers of such agreements.

7.02 *Logistics of payment*. The logistics for payment of each Class are stated in detail above in Article IV which is incorporated herein by reference.

7.03 *Sources of Plan payments for all classes.* Plan payments will be made from the following sources:

(i) cash accumulating in Debtor's DIP account each month from Debtor's ongoing business operations prior to the Effective Date;

(ii) future revenues from Debtor's ongoing business operations after the Effective Date;

(iii) any recovery of attorney's fees awarded to Debtor in litigation with its creditors;

(iv) any avoidance action recoveries, whether through collection or settlement; and

(v) with regard to the balloon payment to Class 2 creditors, from a loan, obtaining new equity investors, any accumulated cash from business operations, or a combination of the foregoing methods.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01 *Definitions and Rules of Construction.* The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the definitions contained in this Article.

8.02 *Effective Date of Plan.* The effective date of this Plan is the **fifteenth (15th)** business day following the date of the entry of the order of confirmation. But if the Confirmation Order is not a Final Non-appealable Order (as defined in this Plan), or if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03 *Severability.* If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04 *Binding Effect.* On the date on which the Court enters an Order confirming the Plan, the provisions of the Plan shall be binding on the reorganized Debtor, the estate, all creditors, all holders of claims and interests, and all other parties in interest, whether or not such entities are impaired and whether or not such entities have accepted the Plan. The rights and obligations of any person or entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns or heirs of such person or entity. Notwithstanding the foregoing, in circumstances in which the terms of the Settlement Agreement differ from the terms set forth herein, the terms of the Settlement Agreement shall govern and control.

8.05 *Headings / Captions.* The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06 *Controlling Effect.* Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure), the laws of the State of Georgia govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as may be otherwise expressly provided in specific provisions of this Plan.

8.07 *Final Order*. An Order shall become a "Final Non-appealable Order" when it has not been reversed, stayed, modified or amended; when the time to appeal or seek *certiorari,* review or rehearing has expired or been effectively waived; and when such Order has become conclusive on all matters adjudicated thereby and is in full force and effect.

8.08 *No Transfer Tax*. As provided in 11 U.S.C. § 1146(c), no transfer or recordation tax or stamp tax or similar tax shall be imposed with respect to the transfer (including sale) of any real estate contemplated under this Plan once confirmed or any other property on which a transfer tax may be imposed which may be exempted by 11 U.S.C. § 1146(c).

8.09 *Cram-down*. Debtor will, if necessary, rely upon the "cram-down" provisions of 11 U.S.C. § 1129(b) for the purpose of obtaining confirmation of the Plan, and requests that the Plan be confirmed pursuant to Section 1129(b) of the Bankruptcy Code in the event that all requirements for confirmation are met except the provisions of Section 1129(a)(8).

8.10 *Retained rights*. Debtor retains all rights to seek turnover of estate property, avoidance of fraudulent or preferential transfers, to avoid post-petition transfers, and/or to assert its strong-arm powers, including all rights under 11 U.S.C. §§ 542, 544, 547, 548 and 549, regardless of whether demand has been made or an adversary proceeding or other action has been filed prior to or after confirmation of this Plan, and all such rights to pursue causes of action are vested in the Debtor by this Plan. Debtor retains all rights to object to Proofs of Claim, previously scheduled claims and informal claims.

8.11 *Compensation for Services*. Debtor has agreed to pay, or may after filing of this Plan seek to pay, subject to this court's review and approval upon application with respect to payments made from funds of Debtor's bankruptcy estate, for the professional services of: (A) accountants; (B) appraisers; (C) legal counsel; (D) agents and brokers if Court approval of agents and brokers' commissions is deemed outside the ordinary course of business; (E) consultants or experts involved with Plan feasibility determinations. The Debtor may continue to employ, without further Order of the Court, those professionals whose employment was approved prior to confirmation of this Plan. Notwithstanding any provision of this Plan, such payments are expressly authorized upon application and Order of the Court until this case is closed.

8.12 *Retention of Jurisdiction; Modification*. The Court shall retain jurisdiction (notwithstanding anything contained elsewhere herein) after confirmation of the Plan: (a) to

consider (and reconsider if appropriate) claims and objections thereto; (b) to hear and determine any adversary proceeding pending on the Effective Date or arising after the Effecting Date, including to pursue any claim referenced in the Disclosure Statement; (c) to hear and approve of settlements of adversary proceedings; (d) to hear and determine claims for payment of attorney's fees, other professional fees, and expenses; (e) to fix any other expenses of administration and compensation; (f) to enforce the terms of the Settlement Agreement, but such jurisdiction shall not be exclusive with respect to enforcement of the Settlement Agreement terms in other jurisdictions or courts; (g) to enforce the Plan or any Order previously entered in the above-captioned case; (h) to hear and determine any dispute arising under or relating to the Plan or arising under or relating to this Chapter 11 reorganization case, including any dispute concerning the existence of any default under this Plan; and (i) to enforce all discharge provisions of the Plan. This Plan may be modified pursuant to Section 1127 of the Bankruptcy Code to the extent permitted by applicable law.

8.13 *Property of the Estate*. The Debtor shall retain all property, including proceeds of property, free and clear of any liens, claims and encumbrances, except for any liens, claims and encumbrances whose continuation is expressly provided for in this Plan.

8.14 *Authorizations*. The entry of an Order confirming this Plan shall constitute authority for the Debtor to take or cause to be taken any and all actions necessary or appropriate to consummate the provisions of this Plan, including executing documents necessary or desirable to effectuate the provisions of this Plan.

8.15 *Dates*. If any date or deadline provided for in this Plan falls on a Saturday, Sunday, federal holiday, or day recognized as a holiday by the government of the State of Georgia (a "Holiday"), then the actions or event required by such date shall be automatically extended to the next day that is not a Holiday.

8.16 *"Plan" definition*. As used herein, "Plan" refers to this plan and includes any amendments or modifications made from time to time, and includes any and all exhibits and reports submitted in support hereof or referenced herein.

8.17 *Revocation or Modification of Proposed Plan*. Debtor reserves the right to revoke, withdraw or modify this Plan prior to the confirmation hearing.

8.18 *Plan Controls Contrary Documents*. In the event that any provision of this Plan conflicts with, or might be read to create an ambiguity with, the Disclosure Statement then the

terms of this Plan shall control. Any contrary or modifying terms in the Order confirming this Plan shall control over terms of this Plan. Notwithstanding the foregoing, in circumstances in which the terms of the Settlement Agreement differ from the terms set forth herein, the terms of the Settlement Agreement shall govern and control.

8.19 *Governing law*. Except to the extent that the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, or other federal laws apply, the rights and obligations arising under or preserved under this Plan shall be governed by the laws of the State of Georgia, without regard to its choice of law rules.

ARTICLE IX
DEFAULT; REMEDIES

9.01 *Event of Default Defined*. An "Event of Default" means any failure on the part of Debtor to pay fully when due any payment required to be made in accordance with the provisions of the Plan, or failure to perform or violation of any other obligation under the Plan, that remains uncured for a period of seven (7) calendar days after written notice of such failure of payment or performance or violation from an affected creditor has been received by the Debtor at the address last listed by the Debtor as its mailing address in pleadings filed in this case and the undersigned Debtor's counsel. Debtor is presumed to have received notice on the notice date if it is sent as set forth herein.

9.02 *Default cure provisions*. Upon and after any Event of Default, Debtor is authorized, but not in any way required, to:

9.02.1 obtain a loan or a capital contribution and may enter into documents embodying the terms of the loan or capital contribution, including a loan or capital contribution from insiders of the Debtor, without further hearing or approval of the Court in the event that an Event of Default occurs, provided that: (a) the loan or capital contribution will be used to cure fully the default regardless of how the loan proceeds or capital contribution beyond the default amount are used, and (b) any loan may accrue interest not in excess of the prime rate stated in the Wall Street Journal on the date of execution of a promissory note from the Debtor to the lender plus three percent (3%); or

9.02.2 seek Court approval to modify this Plan.

9.03 *Remedies upon Default*. All creditors shall have all the rights and remedies provided by law upon the occurrence of an Event of Default, including any rights to seek (a) appointment of a trustee, (b) modification of the plan, (c) conversion of the case to a case under Chapter 7 of the Bankruptcy Code, and/or (d) any other rights permitted by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and applicable non-bankruptcy law, including in the case of the IRS all administrative rights and remedies available to it under applicable non-bankruptcy law, and in the case of secured creditors who retain lien rights under this Plan after confirmation of the Plan the right to foreclose on their collateral, all without prejudice to Debtor's right to seek to modify the plan and/or otherwise oppose such requests for relief except as otherwise set forth herein.

## ARTICLE X
## DISCHARGE; PERMANENT INJUNCTION

10.01 *Discharge*. On the Effective Date of this Plan, the Debtor will be discharged from any debt or claim that arose before confirmation of this Plan solely if, and to the extent, permitted by 11 U.S.C. § 1141 of the Code. Without limiting the foregoing, the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

10.02 *Permanent Injunction*. The entry of an Order confirming this Plan shall operate as an injunction against any act against the Debtor or its property to initiate, prosecute, enforce, liquidate, collect or otherwise assert any claim or interest against the Debtor and its property except as provided in this Plan.

This 30th day of January, 2019.

[signature follows]

Respectfully submitted,

**SNAP LINE SERVICES, INC.**
The Plan Proponent

By: **ROBL LAW GROUP, LLC**

By: /s/ Michael D. Robl
Michael D. Robl
Georgia Bar No. 610905
Attorneys for Debtor

3754 Lavista Road, Suite 250
Tucker, Georgia 30084
Telephone: (404) 373-5153
Facsimile: (404) 537-1761
E-mail: michael@roblgroup.com